**2023 IL 127810**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127810)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
TERANZA JONES, Appellant.

*Opinion filed January 20, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, and Cunningham concurred in the judgment and opinion.

Justices Holder White and O'Brien took no part in the decision.

**OPINION**

¶ 1 Following a jury trial, defendant Teranza Jones was convicted of unlawful possession of ammunition by a felon (720 ILCS 5/24-1.1(a) (West 2018)) and was sentenced to two years' imprisonment. Defendant appealed her conviction, arguing that the State failed to prove her guilty beyond a reasonable doubt. Defendant also

argued she was denied a fair trial, as well as the effective assistance of counsel, based upon an instruction given to the jury.

¶ 2         The Appellate Court, Fourth District, affirmed the Macon County circuit court's judgment. 2021 IL App (4th) 190751-U. For the following reasons, we affirm the appellate court.

¶ 3                                    BACKGROUND

¶ 4         Defendant was arrested following a traffic stop on January 1, 2019, and subsequently was charged with unlawful possession of ammunition by a felon. The case proceeded to a jury trial. The State presented one witness in its case-in-chief, Officer Zachary Wakeland. Officer Wakeland testified that he was a patrol officer with the Decatur Police Department. On January 1, 2019, Officer Wakeland stopped a vehicle driven by defendant. During the stop, Officer Wakeland searched defendant's car and found two rounds of .40-caliber ammunition in the glove compartment underneath the vehicle's owner's manual, in a stack of papers. Officer Wakeland explained that, when an officer finds ammunition or anything to do with firearms, the officer checks to see if the person in possession of that ammunition or firearm has a Firearm Owner's Identification card (FOID card) or if the person is a convicted felon. Officer Wakeland told defendant that she was going to be arrested for possession of the ammunition. Defendant responded that the ammunition belonged to her husband.

¶ 5         The State rested its case following the testimony of Officer Wakeland. At the close of the State's case, defense counsel moved for a directed verdict, arguing that the State had not proved the elements necessary for the offense. The trial court denied defendant's motion.

¶ 6         Defendant then testified in her own defense. Defendant acknowledged that she had a prior felony conviction for identity theft from 2002. On the night she was stopped, defendant was leaving her uncle's house and was going around the corner to another house. While her vehicle was being searched, defendant was placed in the back of a police vehicle for approximately an hour. When asked about the .40-caliber ammunition that was found in the vehicle, defendant told the officer that the

ammunition belonged to her husband.[1] Defendant explained that she knew it was her husband's ammunition because they shared a vehicle and because her husband had guns and a FOID card. If a bullet was found in her vehicle, defendant's automatic assumption was that it belonged to her husband. Defendant had no idea that the ammunition was there before the officer confronted her with it.

¶ 7 Defendant's husband, Lee Brown, then testified on defendant's behalf. Brown stated that he and defendant had been married for almost 10 years. Brown stated that the vehicle defendant was driving on January 1, 2019, was registered in her name only but that he also used the vehicle. Brown drove the vehicle to and from East St. Louis, where his children lived. Whenever Brown drove to East St. Louis, he took his firearm with him. When Brown transported his firearm, he put the gun in its case in the trunk and put the clip, or the ammunition, in the glove compartment. Brown identified his FOID card, which was introduced into evidence. Brown also identified the two .40-caliber cartridges as his. Brown testified that he was home, sleeping, when defendant was pulled over. Defendant was pulled over to the side of their house, so Brown was awakened by the police lights and went outside. After an officer put defendant into the squad car, Brown told the officer that the bullets were his and that he had a FOID card.

¶ 8 On cross-examination, Brown testified that defendant knew that he transported a firearm in her car. At the close of Brown's testimony, the defense rested.

¶ 9 Following closing arguments, the jury was given its instructions and was sent back to deliberate. Regarding the charges against defendant, the jury was instructed:

"To sustain the charge of unlawful possession of ammunition by a felon, the State must prove the following propositions:

*First Proposition:* That the defendant knowingly possessed firearm ammunition; and

---

[1]In her testimony and in her brief to this court, defendant describes Lee Brown as her husband. Brown likewise testified that defendant was his wife. Upon review of the record in this case, however, it appears that defendant and Brown had been in a relationship for 10 years at the time of trial but were not married. For purposes of consistency, however, we will describe the relationship of Brown and defendant as husband and wife.

*Second Proposition:* That the defendant had previously been convicted of the offense of Identity Theft."

¶ 10 During its deliberation, the jury tendered two questions to the court. Relevant to the instant case, the jury asked for the definition of "knowingly." In discussing the jury's question with the court, the assistant state's attorney noted that there was an Illinois Pattern Jury Instruction (IPI) defining "knowingly," which was to be given only if the jury asked. That instruction provides:

"[1] A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.

[2] A person [(knows) (acts knowingly with regard to) (acts with knowledge of)] the result of his conduct when he is consciously aware that that result is practically certain to be caused by his conduct.

[3] [Conduct performed knowingly or with knowledge is performed willfully.]" Illinois Pattern Jury Instructions, Criminal, No. 5.01B (approved Dec. 8, 2011) (hereinafter, IPI Criminal No. 5.01B).

¶ 11 Upon review of IPI Criminal No. 5.01B, the trial court stated that only paragraph 1 of the instruction would be applicable, because the committee notes to the instruction stated that paragraph 1 is to be given if the offense is defined in terms of prohibited conduct. Paragraph 2 is given if the offense is defined in terms of prohibited result, or both are given if the offense is defined in terms of both conduct and result. The assistant state's attorney agreed. Defense counsel responded, "I understand what the committee is saying, but I think just giving one, given that last sentence, could—I'd rather give them 1 and 2 personally." When the trial court asked defense counsel how the offense was defined in terms of prohibited conduct, as set forth in paragraph 2, defense counsel responded that defendant would be in possession of the ammunition. Defense counsel then explained that he was "just really worried about that last sentence on number 1, the substantial probability that the fact exists."

¶ 12    The trial court agreed with defense counsel's concerns, stating that its initial reaction to the jury's question was that "knowingly has a plain meaning within a juror or person's common understanding." The trial court noted that the committee comments to the instruction took no position as to whether the instruction should be routinely given in the absence of a specific jury request. The trial court told defense counsel that it could see counsel's concern and that the definition in the instruction did not make matters any easier.

¶ 13    The assistant state's attorney stated:

"the last sentence in paragraph 1 is basically saying knew or should have known which is a recklessness standard in my mind. I've never used this instruction before. I've never had it come up, but I—I know what [defense counsel] is saying is that this recklessness would, I think, be enough to sustain a conviction. And recklessness is a lower standard than actual knowledge in my opinion. *** Frankly, I'm fine with just telling the jury that it's within their common knowledge and not doing an instruction."

Defense counsel agreed that he would "rather just have the jury define it for themselves." The trial court stated that its inclination was the same as the parties, that the jury should just rely on the common understanding of the word, "knowingly." The parties thus agreed that the trial court's response to the jury's question should be, "[t]he word 'knowingly' should be given its plain meaning within the jury's common understanding."

¶ 14    Following deliberations, the jury found defendant guilty of unlawful possession of ammunition by a felon. Defendant then filed a motion for a new trial, arguing that the State did not prove its case beyond a reasonable doubt. The trial court denied defendant's motion.

¶ 15    At defendant's sentencing hearing, both the State and defense counsel asked for the mandatory minimum sentence of two years' imprisonment. The trial court sentenced defendant to two years, stating that he wished he could give only probation.

¶ 16        Defendant appealed her conviction. 2021 IL App (4th) 190751-U.[2] Defendant first argued that the State failed to prove her guilty beyond a reasonable doubt. *Id.* ¶ 28. The appellate court rejected this claim. *Id.* ¶ 39. Viewing the evidence in the light most favorable to the State, the appellate court concluded that a rational trier of fact could find the essential elements of unlawful possession of ammunition by a felon had been proven beyond a reasonable doubt. *Id.*

¶ 17        Defendant next argued that she was denied a fair trial and the effective assistance of counsel when the trial court improperly instructed the jury on the definition of "knowingly" and when counsel failed to object to the instruction. *Id.* ¶ 41. The appellate court found that defendant failed to overcome the presumption that defense counsel's conduct was sound trial strategy. *Id.* ¶ 44. The appellate court further found that the trial court did not err in refusing to tender IPI Criminal No. 5.01B, as that instruction might have prejudiced defendant under the facts of this case. *Id.* ¶ 50. Finally, having found no error, the appellate court rejected defendant's request to review the alleged instructional error for plain error. *Id.* ¶ 51.

¶ 18        Defendant filed a petition for leave to appeal the appellate court's decision to this court pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2021). We allowed defendant's petition.


¶ 19                                ANALYSIS

¶ 20        In this court, defendant again argues that the State failed to prove her guilty beyond a reasonable doubt. Defendant also argues she was denied a fair trial, as well as the effective assistance of counsel, when the trial court failed to give the jury the IPI defining "knowingly."

¶ 21        In addressing her first issue, defendant argues, as she did in the appellate court, that the standard of review on her reasonable doubt claim is *de novo*. Defendant acknowledges that, generally, the standard of review for a reasonable doubt challenge is whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found all the essential elements of the crime

---

[2]The appellate court's opinion was modified upon denial of defendant's petition for rehearing to correct some factual errors.

beyond a reasonable doubt. Defendant claims the facts in this case are undisputed, however, so *de novo* review applies. In support, defendant cites *In re Ryan B.*, 212 Ill. 2d 226 (2004), *People v. Smith*, 191 Ill. 2d 408 (2000), and *People v. Howard*, 2016 IL App (3d) 130959.

¶ 22    The State responds that *de novo* review applied in those cases because the issues involved questions of statutory interpretation, *i.e.*, what facts must be proved to establish guilt, rather than whether the evidence was sufficient to prove that fact. This court reviews *de novo* the construction of a statutory element. *People v. Gonzalez*, 239 Ill. 2d 471, 479 (2011). The State argues that *de novo* review does not apply in this case because the issue does not involve a question of statutory interpretation. Rather, the issue in this case presents a material issue of fact— whether defendant knowingly possessed the ammunition.

¶ 23    We agree with the State that the cases cited by defendant in support of *de novo* review are distinguishable. For example, the issue in *In re Ryan B.* was whether the undisputed fact that the defendant asked a child to lift up her shirt constituted enticing, coercing, or persuading for purposes of the sexual exploitation of a minor statute. *In re Ryan B.*, 212 Ill. 2d at 231. The court looked to the language of the statute to determine whether asking constituted coercing, enticing, or persuading. *Id.* at 232. In doing so, the court applied *de novo* review. *Id.* at 231.

¶ 24    Similarly, in *Smith*, the issue was whether the undisputed facts established that the defendant committed the offense of armed violence. *Smith*, 191 Ill. 2d at 411. The court applied *de novo* review to determine whether the undisputed fact that the defendant dropped a gun out of a window before the police entered his apartment constituted armed violence within the meaning of the statute. *Id.*

¶ 25    The court in *Howard* also was asked to apply undisputed facts to the relevant statutory language to determine whether the essential elements of the offense had been proven. *Howard*, 2016 IL App (3d) 130959, ¶ 18. The issue in *Howard* was whether the undisputed facts were sufficient to prove the defendant guilty of being present in a school zone as a child sex offender, based upon the definition of loitering in the statute. *Id.* ¶ 23. The court thus reviewed the issue *de novo*. *Id.* ¶ 18.

¶ 26    Defendant argues that *de novo* review applies in this case because she does not contest the credibility of the State's lone witness, Officer Wakeland. Defendant

states that there also is no dispute as to any of the facts in this case, including defendant's prior felony conviction for identity theft or the fact that two bullets were found in the glove box of the car defendant was driving. Defendant frames the issue in this case as whether she had the requisite legal knowledge for purposes of the statute. According to defendant, because that determination depends solely upon the application of undisputed facts, that issue should be reviewed *de novo*.

¶ 27 Contrary to defendant's characterization of the issue, the question of whether defendant knowingly possessed the ammunition in this case was a question of fact, rather than a question of statutory interpretation. Knowledge is the mental element of the offense of unlawful possession of ammunition by a felon. See *People v. Leib*, 2022 IL 126645, ¶ 37 ("Knowledge *** is the mental element of an offense ***."). This court has long recognized that the question of whether a defendant had knowledge is "one of fact and is for the jury, or for the court where a jury is waived." *People v. Embry*, 20 Ill. 2d 331, 334 (1960); see also *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000) ("Whether there is knowledge and whether there is possession or control are questions of fact to be determined by the trier of fact." (citing *People v. Galloway*, 28 Ill. 2d 355, 358 (1963))). It was within the province of the jury, then, to determine whether defendant knowingly possessed the ammunition.

¶ 28 Accordingly, we review defendant's claim that the State did not prove her guilty beyond a reasonable doubt under the familiar standard that applies to sufficiency of the evidence claims. When faced with a challenge to the sufficiency of the evidence, it is not this court's function to retry the defendant. *Schmalz*, 194 Ill. 2d at 80. In reviewing the sufficiency of the evidence in a criminal case, this court asks whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37. A reviewing court will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *Id.* All reasonable inferences from the evidence must be drawn in favor of the State. *Id.* A criminal conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Id.*

¶ 29    Defendant argues that, even under the reasonable doubt standard, the State did not prove her guilty. To sustain a conviction for unlawful possession of ammunition by a felon, the State must prove that (1) the defendant has a prior felony conviction and (2) the defendant had knowing possession of the ammunition. Defendant concedes that she had a prior felony conviction and that two bullets were found in the glove box of her vehicle. Defendant denies that the State proved she knowingly possessed the ammunition.

¶ 30    Possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). In this case, the ammunition was found near defendant, not on her person, so the State had to show constructive possession of the ammunition. To establish constructive possession, the State must prove that the defendant knew contraband was present and that the defendant exercised immediate and exclusive control over the area where the contraband was found. *People v. Wise*, 2021 IL 125392, ¶ 28. Further, proof that a defendant had control over the premises where contraband is located gives rise to an inference of knowledge and possession of that contraband. *Givens*, 237 Ill. 2d at 335. Because knowledge is the mental element of an offense, it is often proved by circumstantial evidence rather than direct proof. *Leib*, 2022 IL 126645, ¶ 37.

¶ 31    Defendant argues that she was convicted based solely on the fact that she correctly guessed that the two bullets belonged to her husband, along with her husband's testimony that defendant knew he transported his firearm in her vehicle. Defendant maintains that this evidence is not sufficient to prove her guilty beyond a reasonable doubt.

¶ 32    We disagree. As noted, in reviewing the sufficiency of the evidence in a criminal case, all reasonable inferences must be drawn in favor of the prosecution. *Hardman*, 2017 IL 121453, ¶ 37. That standard of review does not allow a reviewing court to substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *Id.* In weighing the evidence, a trier of fact need not search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *Id.*

¶ 33    We find that a rational trier of fact could have found defendant had control over the premises where the ammunition was located. The evidence showed that defendant was the only registered owner of the vehicle. The ammunition was found

in the glove box of that vehicle when defendant was stopped while driving. Viewing the evidence in the light most favorable to the State, this evidence was sufficient for the trier of fact to reasonably infer that defendant had constructive possession of the ammunition.

¶ 34     We further find that a rational trier of fact could find that defendant had knowledge of the ammunition. This court has recognized that, where possession has been shown, an inference of culpable knowledge can be drawn from the surrounding facts and circumstances. *Givens*, 237 Ill. 2d at 335.

¶ 35     In this case, when Officer Wakeland told defendant that she was being arrested for possessing ammunition, defendant responded that the ammunition belonged to her husband. Defendant's husband testified that he transported his firearm in defendant's vehicle when he drove to visit his children and that defendant knew that he transported his firearm in her vehicle. Defendant testified and denied that she knew the ammunition was in the vehicle before the officer confronted her with it. Defendant further testified that her automatic assumption was that the ammunition belonged to her husband because he was the one with the guns and a FOID card.

¶ 36     The evidence concerning defendant's knowledge, while highly circumstantial, was not entirely lacking. The credibility of defendant and her husband, and the weight to be given their testimony, are determinations exclusively within the province of the trier of fact. We will reverse a criminal conviction only when the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Hardman*, 2017 IL 121453, ¶ 37. This standard does not require a reviewing court to determine whether it would find the defendant guilty beyond a reasonable doubt, but only whether *any* rational trier of fact, taking all the evidence in a light most favorable to the State, could have found the essential elements of the offense beyond a reasonable doubt.

¶ 37     Applying that standard, we find that a rational trier of fact could find that defendant knowingly possessed the ammunition. While defendant maintained that she did not know the ammunition was in the glove box, the trier of fact was not obligated to accept her testimony. Construing the evidence in this case in a light most favorable to the prosecution, the trier of fact could infer that defendant did knowingly possess the ammunition. The appellate court, therefore, did not err in

finding that the State proved defendant guilty of unlawful possession of ammunition by a felon beyond a reasonable doubt.

¶ 38        Defendant next argues that she was denied a fair trial and the effective assistance of counsel when the trial court improperly instructed the jury on the definition of knowingly. Defendant first contends that the trial court committed plain error when it failed to give the jury IPI Criminal No. 5.01B in response to the jury's question asking for the definition of "knowingly." Citing *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994), defendant argues that, when the jury has posed an explicit question or has requested clarification on a point of law arising from facts about which there is doubt or confusion, a trial court has a duty to provide an instruction to the jury.

¶ 39        Defendant did not object to the trial court's answer to the jury's question, nor did defendant raise the issue in a posttrial motion. This court has held that a "defendant forfeits review of any putative jury instruction error if the defendant does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion." *People v. Herron*, 215 Ill. 2d 167, 175 (2005). Defendant does not directly address the forfeiture but asks this court to review the error as plain error.

¶ 40        The State responds that defendant's claim is not subject to plain error review because defendant not only failed to object to the trial court's answer but affirmatively acquiesced to that answer.

¶ 41        We agree. In discussing the jury's question and whether to give the IPI defining "knowingly," defense counsel indicated his concern with giving paragraph 1 of the instruction, the paragraph applicable to defendant's case. Defense counsel stated that he was "just really worried about that last sentence on number 1, the substantial probability that the fact exists." The trial court and the assistant state's attorney agreed with defense counsel's concerns. The assistant state's attorney explained that what defense counsel was saying was that the last sentence of paragraph 1 basically created a reckless standard, which would be enough to sustain a conviction. The assistant state's attorney said that in his opinion, recklessness was a lower standard than actual knowledge. Defense counsel stated that he would rather have the jury define knowingly for themselves. The trial court and the parties agreed that the jury should simply be told that the definition of knowingly was the

jury's common understanding of the word, rather than the IPI definition of knowingly. In agreeing to that answer to the jury's question, defense counsel invited any error concerning the instruction. See *People v. Parker*, 223 Ill. 2d 494, 508 (2006) (defendant invited any error concerning jury instructions when he submitted an instruction and agreed to the giving of another).

¶ 42 Defendant, however, argues that this case is analogous to *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 73, where the appellate court found that the trial court committed reversible error in failing to give the jury a precisely tailored version of the applicable IPI, despite the fact that the prosecutor and defense counsel agreed to the unmodified instruction. The *Johnson* defendant was charged in two separate cases with unlawful possession of a weapon by a felon and with misdemeanor domestic battery. *Id.* ¶¶ 4-5. The parties agreed to join the charges for purposes of a jury trial. *Id.* ¶ 5. Prior to trial, the State moved to introduce evidence of other domestic violence incidents. *Id.* ¶ 7. The trial court ruled that the victim could testify that defendant had committed domestic violence against her prior to the charged offense and held that certain threats made by defendant were admissible for purposes other than to show propensity. *Id.* ¶¶ 10-11. The parties also stipulated to defendant's prior felony conviction but agreed that conviction was inadmissible for impeachment purposes because it was more than 10 years old. *Id.* ¶ 12.

¶ 43 During the trial, the trial court did not give limiting instructions when witnesses testified to uncharged conduct. *Id.* ¶ 66. The trial court did not instruct the jury concerning charged and uncharged conduct. *Id.* The trial court also did not instruct the jury that defendant's prior felony conviction was to be considered for the limited purpose of determining defendant's guilt or innocence on the unlawful possession of a weapon by a felon charge only. *Id.* ¶ 71. At the jury instruction conference, the trial court suggested that the jury be instructed concerning which statements at trial went to propensity. *Id.* ¶ 72. Defense counsel rejected the trial court's suggestion, responding that she did not object to the State's tendered instruction concerning other crimes evidence, commenting that any change to the instruction would confuse the jury. *Id.*

¶ 44 On appeal, the *Johnson* defendant argued that the trial court erroneously failed to give limiting instructions when witnesses testified to uncharged conduct. *Id.* ¶ 66. The appellate court agreed, finding the trial court committed plain error. *Id.*

¶ 67. The appellate court concluded that the instructional error was so grave that it denied defendant a fair trial and undermined the integrity of the judicial process. *Id.* ¶ 76.

¶ 45    In so holding, the appellate court rejected the State's claim that plain error review was forfeited because defendant invited the error. The appellate court found that the concerns underlying the invited error rule were not present in the case. *Id.* ¶ 78. The appellate court explained it was the prosecution that first introduced the flawed instruction and offered no suggestion for curing the defect, even when pointed out by the trial court. *Id.* In addition, although defense counsel persistently declined the trial court's attempts to modify the instruction, the appellate court viewed counsel's tactics as an attempt to mitigate the jury confusion resulting from a convoluted instruction, rather than invited error. *Id.*

¶ 46    Defendant claims that in this case, like *Johnson*, the trial court committed grave error when it gave the jury an improper jury instruction on the definition of "knowingly." Defendant maintains that the trial court had a duty to give IPI Criminal No. 5.01B, despite defense counsel's agreement to not give the jury that instruction.

¶ 47    We find this case distinguishable from *Johnson*. The *Johnson* court found plain error, and overlooked any invited error, on the basis that the erroneous jury instruction constituted such a substantial defect that the instruction created a serious risk that the defendant was incorrectly convicted because the jury did not understand the applicable law. *Id.* ¶ 76. That error was compounded by the erroneous joinder of the unlawful possession of a weapon by a felon case and the domestic battery case. *Id.* ¶ 75. The verdict thus was unreliable because the defendant's convictions might have been based upon uncharged conduct, defendant's threats, and defendant's prior felony conviction. *Id.* ¶ 67.

¶ 48    Similar concerns are not present in this case. Defendant points to the first part of paragraph one, that a person acts knowingly when "he is consciously aware that his conduct is of that nature or that those circumstances exist." IPI Criminal No. 5.01B. Defendant claims that a proper jury instruction, containing the "consciously aware" language, would have helped the jury acquit her. Defendant, however, does not address the last sentence of the first paragraph, which states that knowledge includes awareness of the substantial probability that the fact exists. *Id.* This was

the portion of the instruction that worried the parties and the trial court. In fact, as the prosecutor pointed out, the IPI definition of "knowingly" in paragraph 1 likely would have been enough to sustain a conviction, as the definition suggested a reckless standard of proof. Considering Brown's testimony that defendant knew he transported his firearm in her vehicle, it is likely that the jury would have found defendant had an awareness of the substantial probability that there were two bullets in her glove box.

¶ 49        Under the circumstances, it was in defendant's interest to instruct the jury to use their common understanding of the word "knowingly" rather than give IPI Criminal No. 5.01B. The trial court's failure to give the jury IPI Criminal No. 5.01B was not a grave error that prejudiced defendant's right to a fair trial and undermined the integrity of the judicial process. The trial court, therefore, did not commit plain error when it declined to give the jury IPI Criminal No. 5.01B.

¶ 50        Defendant also argues that she was deprived of her right to the effective assistance of counsel when defense counsel failed to insist that the jury be given IPI Criminal 5.01B.

¶ 51        The familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) applies to claims of ineffective assistance of counsel. A defendant must show that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different but for counsel's unprofessional errors. *Id.* at 694. Matters of trial strategy are generally immune from ineffective assistance of counsel claims. *People v. Manning*, 241 Ill. 2d 319, 327 (2011).

¶ 52        Defendant denies that defense counsel's actions were trial strategy. Defendant suggests that defense counsel's conduct concerning the jury instruction was based upon a mistake of law, rather than trial strategy. In support, defendant notes that defense counsel stated that he wanted to include paragraph 2 of IPI Criminal No. 5.01B in the jury instruction, even though that paragraph did not apply to defendant's case. Defendant also asserts that defense counsel never gave a clear reason for his concern about the language in paragraph 1 of IPI Criminal No. 5.01B.

¶ 53        We disagree with defendant's characterization of defense counsel's actions. Taken in context, it is clear that defense counsel was concerned with the last line of

paragraph 1 of IPI Criminal No. 5.01B, that "[k]knowledge of a material fact includes awareness of the substantial probability that the fact exists." In response to the trial court's statement that only paragraph 1 of the instruction would apply, defense counsel responded that he thought that "just giving one, given that last sentence, could—I'd rather give them 1 and 2 personally." Further, when the trial court asked defense counsel how the offense was defined in terms of a prohibited result for purposes of paragraph 2, defense counsel said that defendant would be in possession of the ammunition but explained that he was "just really worried about that last sentence on number 1, the substantial probability that the fact exists." Both the prosecutor and the trial court agreed with defense counsel's concerns. When the prosecutor stated that he would be fine with not providing an instruction, defense counsel agreed, saying that he would rather have the jurors define "knowingly" for themselves.

¶ 54        It is clear from the exchange between defense counsel, the prosecutor, and the trial court that the language of IPI Criminal No. 5.01B was potentially harmful to defendant's case. Defense counsel's reason for including paragraph 2 of IPI Criminal No. 5.01B was not due to confusion but rather to lessen the impact of the second sentence of paragraph 1. Defense counsel's concerns were well placed, as the evidence that defendant knew her husband transported his firearm in her vehicle was sufficient to support a finding that defendant had an "awareness of the substantial probability" that there would be ammunition in her glove box. Given that evidence, defense counsel chose, as a matter of trial strategy, not to give the jury IPI Criminal No. 5.01B.

¶ 55        Defendant, however, claims that this case is analogous to the decisions in *People v. Lowry*, 354 Ill. App. 3d 760 (2004), *People v. Sperry*, 2020 IL App (2d) 180296, and *People v. Ayala*, 2022 IL App (1st) 192063-U. Defendant claims those cases support a finding that defense counsel's failure to request that the trial court instruct the jury on IPI Criminal No. 5.01B amounted to ineffective assistance.

¶ 56        We disagree. In *Lowry*, the defendant was charged with aggravated battery with a firearm, as well as attempted first degree murder and armed robbery. *Lowry*, 354 Ill. App. 3d at 761. During deliberations, the jury sent a note to the trial court asking if "knowingly" implied that " 'it wasn't an accident, or can it be accidental and knowing?' " *Id.* at 762. Defense counsel agreed with the State and the trial court to

- 15 -

simply respond by telling the jury to keep deliberating. *Id.* at 763. The appellate court found defense counsel's failure to offer IPI Criminal No. 5.01B was not trial strategy but, rather, reflected counsel's confusion regarding the jury's question. *Id.* at 767. The record showed that defense counsel believed the jury's question concerned the intent element of the attempted murder charge against defendant, rather than the jury's confusion over the "knowingly" element of the aggravated battery charge. *Id.* The appellate court found that defense counsel provided deficient representation by failing to answer the jury's question. *Id.* In addition, the error was not harmless beyond a reasonable doubt, because the issue of whether the shooting was committed knowingly or accidentally was critical to the aggravated battery charge. *Id.* at 768.

¶ 57   Here, in contrast, despite defendant's attempt to portray defense counsel as confused concerning the proper definition of "knowingly," it is clear that defense counsel was concerned about the instruction's definition of "knowingly" and wished to limit the impact of the definition by presenting the jury with paragraphs 1 and 2 from the instruction. Moreover, the jury in this case was given an instruction that "knowingly has a plain meaning within a juror or person's common understanding." The *Lowry* jury was given no instruction and instead was told to simply keep deliberating.

¶ 58   The decision in *Sperry*, 2020 IL App (2d) 180296, is similarly distinguishable. There, the defendant was charged with aggravated battery based on the use of a firearm. *Id.* ¶ 3. The trial jury was instructed that it had to find that the defendant knowingly discharged a firearm in order to find the defendant guilty of that charge. *Id.* ¶ 7. During deliberations, the jury sent a note asking whether "knowingly discharged a firearm" meant that the defendant " 'intended to discharge the gun on purpose or he knew a gun was discharged?' " *Id.* ¶ 8. The trial court and the parties decided not to give IPI Criminal No. 5.01B and instead agreed to respond that the trial court was not giving any further instructions and that the instructions the jury received were sufficient. *Id.*

¶ 59   The appellate court found that the defense counsel's performance was deficient and prejudiced the defendant. *Id.* ¶ 18. The appellate court stated that IPI Criminal No. 5.01B would have eliminated the jury's confusion over whether it could convict the defendant of aggravated battery, even though it found that the defendant's

weapon discharged accidentally. *Id.* ¶ 21. Under the circumstances, the appellate court held that defense counsel's actions could not be considered trial strategy. *Id.* Further, those actions prejudiced the defendant, requiring the appellate court to reverse and remand the case for a new trial. *Id.*

¶ 60    Here, in contrast, it was probable that giving IPI Criminal No. 5.01B would have increased the likelihood that defendant would be convicted, rather than reduced that likelihood. Further, as previously noted, the jury in this case was given an instruction on "knowingly," *albeit* not the IPI Criminal No. 5.01B instruction, while the jury in *Sperry* was given no instruction.

¶ 61    The court in *Ayala* relied upon *Lowry* and *Sperry* to find that defense counsel committed reversible error in failing to offer IPI Criminal No. 5.01B in response to a question from the trial jury. 2022 IL App (1st) 192063-U. The defendant was charged with unlawful use of a weapon by a felon. During deliberations, the trial jury sent the trial court a note stating, " '[D]efine *knowingly possessed*. Does this mean he was aware that those items were in his possession?' (Emphasis in original.)" *Id.* ¶ 9. Neither the State nor defense counsel suggested the use of IPI Criminal No. 5.01B. *Id.* The trial court instructed the jury that it had all the evidence and all the instructions and to " '[p]lease continue to deliberate.' " *Id.*

¶ 62    The *Ayala* court found no significant difference between the case before it and the decisions in *Lowry* and *Sperry*. *Id.* ¶ 25. The court stated that it did not see any strategic purpose for failing to request the instruction and therefore reversed the defendant's conviction and remanded for a new trial. *Id.*

¶ 63    As discussed, we find significant differences between the instant case and the decisions in *Lowry* and *Sperry*. Consequently, we reject defendant's claim that this case is analogous to *Ayala*. Defense counsel's actions in this case, in contrast to the preceding cases, established that defense counsel's decision not to instruct the jury on IPI Criminal No. 5.01B was a matter of trial strategy. The decisions in *Lowry*, *Sperry*, and *Ayala* are distinguishable and do not support defendant's claim that she received ineffective assistance of trial counsel.

¶ 64    In so holding, we find that this case is analogous to the appellate court's decision in *People v. Mims*, 403 Ill. App. 3d 884 (2010). The defendant in *Mims* was charged with aggravated criminal sexual assault, as well as aggravated

kidnapping and aggravated robbery. *Id.* at 885. The defense counsel presented a theory of consent as a defense. On appeal following his conviction, defendant argued that his defense counsel was ineffective for failing to request a jury instruction on the defense of consent, arguing that, without the instruction, the jury was given no legal basis upon which to acquit him. *Id.* at 890.

¶ 65        During the jury instruction conference, the trial court raised the jury instruction defining consent. *Id.* at 891. The jury instruction concerning consent, Illinois Pattern Jury Instructions, Criminal, No. 11.63 (4th ed. 2000) (hereinafter IPI Criminal 4th No. 11.63), stated that "It is a defense to the charge of _____ that _____ consented." The committee note to IPI Criminal 4th No. 11.63 advised that the definition of consent (IPI Criminal 4th No. 11.63A) is to be given with the consent instruction. IPI Criminal 4th No. 11.63A stated that the word "consent" meant a "freely given agreement to the act of [(sexual penetration) (sexual conduct)] in question." The second sentence of the instruction, however, stated that "[l]ack of verbal or physical resistance or submission by the victim resulting from the use of force or threat of force by the defendant [or the victim's manner of dress] shall not constitute consent." *Id.*

¶ 66        At the jury instruction conference, defense counsel indicated he was not asking for IPI Criminal 4th No. 11.63, explaining that, given the way the case had gone, he did not believe the instruction helped his case. *Mims*, 403 Ill. App. 3d at 891. The trial court agreed, stating that further definition of consent would, in fact, assist the State. *Id.* The appellate court found that defense counsel made a reasonable tactical decision not to instruct the jury on the definition of consent, as the second sentence of the instruction undermined the defendant's defense. *Id.* at 893. The appellate court concluded that defense counsel's strategy was reasonable given the State's evidence. *Id.* The appellate court declined to find defense counsel's performance to be deficient in hindsight. *Id.*

¶ 67        Here too, we find defense counsel's strategy was reasonable given the wording of the last sentence of paragraph 1 of IPI Criminal No. 5.01B. Defense counsel made a tactical decision that the jury's common understanding of the word "knowingly" would encompass a higher standard of proof than an "awareness of the substantial probability that the fact exists." Like the *Mims* court, we will not now second-guess counsel's strategic decision. Defense counsel's actions were not

objectively unreasonable. Under the facts of this case, we find that defendant cannot show that she received ineffective assistance of counsel. We therefore find that the appellate court properly affirmed the trial court's judgment.

¶ 68                                    CONCLUSION

¶ 69       For all the foregoing reasons, we affirm the appellate court's judgment, which affirmed defendant's conviction and sentence.

¶ 70       Affirmed.

¶ 71       JUSTICES HOLDER WHITE and O'BRIEN took no part in the consideration or decision of this case.