2024 IL App (1st) 221284-U

No. 1-22-1284

Order filed February 5, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 C6 60214 |
| | ) | |
| WILLIE CHAPMAN, | ) | Honorable |
| | ) | Brian K. Flaherty, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's conviction for unauthorized use or possession of a weapon by a felon over his contention that the State did not prove his constructive possession of a firearm beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Willie Chapman was found guilty of four counts of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2016)) and sentenced to six years in the Illinois Department of Corrections (IDOC). On appeal, defendant

contends that the State did not prove his constructive possession of a firearm beyond a reasonable doubt. We affirm.

¶ 3    Defendant was originally charged with Methamphetamine Possession with Intent to Deliver/Methamphetamine Delivery, Methamphetamine Possession, Possession of Cannabis with Intent to Deliver/Delivery of Cannabis, Possession of Cannabis, and four counts of UUWF.

¶ 4    At trial, Matt DeVita testified that he managed a property in the 14000 block of South Hoxie in Burnham, Illinois that was leased to Wendell Christmas in the fall of 2016. When Christmas moved into the property on October 1, 2016, he gave DeVita a security deposit and the October rent. Although defendant's name was not on the lease, DeVita had his phone number, had seen him at the property multiple times, and had received the November rent for the property from him, in cash. When DeVita served a "five-day notice" at the property on December 13, 2016, defendant and some of Christmas's family members were present, but Christmas was not. Defendant was also present when police officers executed a court ordered eviction at the property on March 17, 2017.

¶ 5    Cook County sheriff's deputy Stacy Youpel testified that she and three other deputies were wearing body cameras when they executed the eviction on March 17, 2017 at approximately 8:00 a.m. Upon entering the property, Youpel smelled marijuana and observed the defendant "coming from" the bedroom to the right of the stairs (bedroom 1). Defendant was wearing a white top and was taken to the kitchen while deputies Quinton Bradshaw and Robert Romero conducted a security sweep. After learning from Bradshaw that something had been discovered in bedroom 1, Youpel entered and observed a "weapon" on the bed and small bags of cannabis on a nightstand. Pills and "loose leaf" cannabis were subsequently recovered from under the bed and a bag

containing a "chunky" brown powdery substance was found on a shelf. In addition, cannabis was recovered in a bathroom, "miscellaneous pills" were recovered in a second bedroom, and two magazines and .45-caliber ammunition rounds were recovered in a hallway closet.

¶ 6    Upon being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant told Youpel that he came to the property in the "middle of the night" to get some "p***y." After defendant told Youpel that his clothes were in bedroom 1, one of the deputies retrieved his shirt from the closet so defendant could get dressed. Defendant's girlfriend arrived while the officers were still at the property.

¶ 7    Youpel's body camera footage shows a man on the top of the stairs wearing black bottoms and a white tank top, a female deputy handing Youpel a shirt from bedroom 1, defendant requesting his underwear, Youpel asking whether the underwear is by "the nasty condom" and stating that she is not touching the garment, and a female deputy retrieving underwear from the bed in bedroom 1 and handing the garment to Youpel. Additional footage shows the underwear being given to defendant in the bathroom.

¶ 8    Bradshaw testified that he was the second officer to enter the property. Upon entering, Bradshaw observed defendant on the stairs, next to bedroom 1. Defendant was partially facing bedroom 1 and partially facing the stairs. Bradshaw then searched the property, including bedroom 1. When Bradshaw entered bedroom 1, he saw a firearm laying on the left side of the bed near pillows. Bradshaw acknowledged that he did not initially see the firearm, which was "next to the pillow" and appears "kind of fuzzy" on his body camera footage. A second bedroom contained "miscellaneous items," an empty closet and no furniture. The only bed at the property was located in bedroom 1. Bradshaw did not find any "indicia" showing that defendant lived at the property.

¶ 9    Defendant testified that on March 17, 2017, he and his "lady friend" Tracy Foster were in the garage of the property shooting dice and playing poker. They went inside the house of the property so Foster could use the bathroom and proceeded upstairs to have sex in the attic. Since there was no furniture, they slept on the floor. Defendant was alone when he woke up the following morning to the sound of a doorbell and "beating" on the door. He went downstairs and saw police officers entering the house. Defendant had never been to the property before, did not know DeVita or Christmas, did not give his name to Christmas to use as a reference on the lease, never gave any rent to DeVita, and did not know about, or see, any firearm or drugs recovered at the property. Regarding December 13, 2016, defendant claimed that he arrived at O'Hare Airport after 9 a.m. on that date and was not at the property when DeVita served the five-day notice.

¶ 10    The "rental credit application," five-day notice, affidavit of service, and defendant's flight itinerary were admitted into evidence. The court noted that the itinerary showed a scheduled arrival at O'Hare at "9:00 something in the morning" on December 13, 2016.

¶ 11    In closing, the State argued that DeVita's testimony established that defendant paid the rent in November, 2016 and was present when the "eviction notice" was served on December 13, 2016. Defendant was also present when the deputies executed the eviction order on March 17, 2017 and was attired in "a state of dress" suggesting that he had been sleeping when the officers arrived. The State further argued that defendant's testimony was impeached by the body camera footage admitted into evidence.

¶ 12    Defense counsel argued that it was not "clear" in the body camera footage "where" defendant was "coming from" when the officers entered the property. Additionally, the property was leased to Christmas, not the defendant. Counsel acknowledged "Will Chapman" was listed as

a "reference" on the lease, but noted that defendant's first name was "Willie," not Will. Counsel further argued that no mail or clothing belonging to defendant was found at the house, other than the clothes defendant was wearing when the officers arrived. Counsel claimed that DeVita was unbelievable because he could not remember the date defendant allegedly paid the November rent or the time of day he served the five-day notice, reasoning that defendant was simply "in the wrong place at the wrong time." At the conclusion of the oral arguments, the trial court took the matter under advisement to July 31, 2018 for ruling.

¶ 13    On July 31, 2018, defendant failed to appear in court because he had been arrested in Texas and was in federal custody. The trial court issued a bond forfeiture and warrant for defendant's arrest based on his failure to appear. Defendant was subsequently convicted of distributing methamphetamines and sentenced to 24 months in the Federal Bureau of Prisons and three years of supervised release. Upon being released from federal custody on March 24, 2020, defendant failed to voluntarily surrender himself to the circuit court in connection with this case. He was eventually arrested on the outstanding warrant and brought back before the court on October 25, 2021.

¶ 14    On January 11, 2022, the trial court found defendant guilty of four counts of UUWF. In issuing its ruling, the court noted that the firearm was found in "plain view" on a bed in the same room that defendant was exiting when the officers arrived on the scene. Although defendant denied being in that room, his clothes were found there. The court also indicated that DeVita was a credible witness and, unlike defendant, had no motive to lie. However, since the drugs were recovered from different areas of the house and it was unclear whether defendant was the sole resident, the court found defendant not guilty of the four drug charges.

¶ 15    On May 25, 2022, defendant was sentenced to six years in the IDOC. His amended motion to reconsider sentence was denied.

¶ 16    On appeal, defendant contends that the evidence was insufficient to establish he constructively possessed a firearm. He argues that the State did not establish his immediate and exclusive control over the area where the firearm was found or that he knowingly possessed it. He further argues that he did not reside at the property, which was leased to Christmas.

¶ 17    In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). This court will not retry a defendant, and on review, we must draw all reasonable inferences from the evidence in favor of the State. *People v. Jones*, 2023 IL 127810, ¶ 28.

¶ 18    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). The trial court is not required to disregard inferences that naturally flow from the evidence or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 232 Ill. 2d at 281. A criminal conviction will not be reversed "unless the evidence is so unreasonable,

improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Jones*, 2023 IL 127810, ¶ 28.

¶ 19    To prove defendant committed the offense of UUWF, the State had to establish that he knowingly possessed a firearm after having been convicted of a felony. See 720 ILCS 5/24-1.1(a) (West 2016). Defendant's sole contention on appeal is that the evidence did not establish that he constructively possessed the firearm recovered in bedroom 1 beyond a reasonable doubt.

¶ 20    Possession of a firearm may be actual or constructive. *Jones*, 2023 IL 127810, ¶ 30. Where, as here, the firearm was not found on the defendant's person, the State must prove constructive possession. *Id*.

¶ 21    Constructive possession exists where a defendant has knowledge of the presence of the contraband and exercises immediate and exclusive control over the location where it was found. *Id*. Control is established when a defendant has the capability and intent to maintain dominion and control "over an item, even if he lacks personal present dominion over it." *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Proof that a defendant had control over the location where contraband was found gives rise to an inference of his knowledge and possession of it. *Jones*, 2023 IL 127810, ¶ 30. Knowledge may be demonstrated by evidence of a defendant's declarations, acts, or conduct from which one can infer that he knew the contraband was where it was found. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. A defendant's proximity to the contraband is another factor courts have found relevant when determining whether the defendant had constructive possession of it. *People v. Wise*, 2021 IL 125392, ¶ 29.

¶ 22    Knowledge and possession are questions of fact. *People v Loggins*, 2019 IL App (1st) 160482, ¶ 45. In determining whether constructive possession has been established, a trier of fact

is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of a defendant's guilt. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession is often established by entirely circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003).

¶ 23    Here, viewed in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to find that defendant constructively possessed the firearm. The evidence established that defendant was the only person present when deputies entered the property and observed him at the top of the stairs coming out of the bedroom where the firearm was recovered. His clothing, including his underwear, was also recovered in that bedroom. While defendant's name was not on the property lease, DeVita knew defendant's phone number, received the November 2016 rent from defendant, and had seen defendant at the property on multiple occasions, including on December 13, 2016, when he served the five-day notice. Based on the evidence, it was reasonable to infer that defendant had been sleeping in the bedroom where the gun was recovered when the officers arrived at the house. We find that the evidence sufficiently established that defendant constructively possessed the firearm beyond a reasonable doubt.

¶ 24    While no mail was recovered bearing defendant's name at the property, Deputy Bradshaw clarified that the "primary function" of the eviction unit is to evict people from a property, not search for proof of residency. In addition, defendant's testimony that he had never even visited the property was contradicted by DeVita's testimony that he had seen defendant at the property many times. And, as noted herein, defendant's shirt and underwear were found in the same bedroom where the firearm was recovered. It is well established that a trial court is not "required to accept a defendant's version of the facts." See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53. The

trial court, as the trier of fact, found that DeVita's testimony was credible and defendant's testimony was not. We will not substitute our judgment for that of the trial court as to a witness's credibility. *Jackson*, 232 Ill. 2d at 280-81.

¶ 25 While defendant argues that he was merely in the wrong place at the wrong time, the trial court was not required to disregard reasonable inferences from the evidence or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 232 Ill. 2d at 281. Taken in the light most favorable to the State, the evidence in this case shows, beyond a reasonable doubt, that defendant committed the offense of UUWF.

¶ 26 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27 Affirmed.