2024 IL App (1st) 232454-U

FIRST DIVISION
March 4, 2024

No. 1-23-2454B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee | ) ) | Cook County. |
| v. | ) ) | No. 23111489001 |
| DEMARLO THOMAS | ) ) | Honorable Maryam Ahmad, |
| Defendants-Appellant | ) ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not abuse its discretion in denying pretrial release.

¶ 2    The defendant-appellant, DeMarlo Thomas, appeals from the circuit court's December 6, 2023 order, granting the State's petition for revocation of his pretrial release pursuant to section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code) as recently amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)), and commonly referred to as "the Safety, Accountability, Fairness and Equity-Today

(SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See also Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On appeal, the defendant contends that the circuit court abused its discretion by failing to consider that evidence of the charged crime may have been obtained as a result of an unlawful search or seizure. In addition, the defendant argues that the State failed to prove by clear and convincing evidence that he posed a real and present threat to the safety of the community and that no conditions of release could mitigate the risk of that threat. For the following reasons, we affirm.

¶ 3                                    II. BACKGOUND

¶ 4      The defendant was arrested on December 6, 2023, and charged by felony complaint with: (1) one count of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2022)); and (2) one count of unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103 (West 2022)).

¶ 5      On that same day, the State filed a verified petition seeking to deny pretrial release pursuant to sections 110-2, and 110-6.1(a)(1) of the Act (725 ILCS 5/110-2, 110-6.1(a)(1) (West 2022)), alleging that the defendant was being charged with AHC, which is a detainable Class X felony, and that his pretrial release posed a real and present threat to the safety of the community. The State further asserted that based on the specific and articulable facts of that case, no condition or combination of conditions that the court could impose would mitigate the risk of that threat.

¶ 6      At the hearing on the State's petition, the State proffered that at approximately 10 p.m., on December 5, 2023, uniformed police officers on routine patrol inside an unmarked squad car observed a white Nissan Maxima traveling at "a high rate of speed" southbound on Avalon Road. The officers observed that the car was being driven by a "black male with dreadlocks." The officers made a U-turn and followed the vehicle south on Avalon Road and into an alley at East 78th Street.

Once there, the officers observed that the vehicle was abandoned, with the driver's side door open and the front airbags deployed.

¶ 7    After determining that the vehicle was reported stolen, the officers began canvassing the area for the driver. The officers encountered a black male with dreadlocks, wearing all black clothing, who matched the description of the offender, and detained him. The State proffered that the detained individual was the defendant.

¶ 8    A name check revealed that the defendant had an active warrant for his arrest concerning a parole violation from October 23, 2023. After making this discovery, the officers performed a custodial search of the defendant whereupon they discovered a black-and-silver key fob and a car key inside the defendant's front left pocket. The officers were able to lock, unlock, and start the abandoned Nissan with the recovered key fob.

¶ 9    During their subsequent search of the Nissan the officers observed two firearms in plain sight. Specifically, they recovered a 9 mm Taurus semiautomatic pistol from the center console, and a black Glock 21, whose serial number had been removed and which had been modified to fire fully automatically, from the rear seat. The officers also recovered an extended clip, and a 40-round drum magazine from a green bag inside the car.

¶ 10    The officers subsequently contacted the registered owner of the vehicle, who informed them that he had keys to his vehicle and did not give anyone permission to drive it. The registered owner also told the officers that he did not own any firearms.

¶ 11    The State further proffered that a LEADS check revealed that the defendant did not have either a valid Firearm Owner's Identification (FOID card) or a Concealed Carry License (CCL).

¶ 12    With respect to prior criminal history, the State pointed out that the defendant had three prior felony convictions for unlawful possession of a weapon by a felon (UUWF), namely: (1) a

2018 conviction for which he was sentenced to eight years; (2) a 2015 conviction for which he was sentenced to five years; and (3) a 2012 conviction for which he was sentenced to three years imprisonment. The defendant's background also included a 2012 conviction for manufacture and delivery of heroin, for which he received a sentence of two years' probation, which terminated unsatisfactorily.

¶ 13    After its proffer, the State argued that the proof was evident and the presumption great that the defendant committed the offense of AHC because he was the only individual observed driving the vehicle that contained the two firearms. The State also argued that pretrial detention was necessary because the defendant posed a real and present threat to the safety of the community based on the type of firearms that were discovered in the vehicle and because the vehicle itself had been reported stolen. The State further pointed out that because the defendant was on "stringent conditions of parole" for his prior possession of firearm offenses, it was evident that he could not adhere to any conditions set by the court.

¶ 14    After the State rested, defense counsel argued that the State failed to show by clear and convincing evidence that the proof was evident or the presumption great that the defendant committed the charged offense. Counsel asserted that in weighing the evidence offered at the detention hearing the court was permitted to consider whether the evidence that proved the charged crime may have been the result of an unlawful search and seizure. 725 ILCS 5/110-6.1(f)(6) (West 2022). Counsel then argued that the description of the offender as a "black male with dreadlocks" was "extremely vague" and therefore insufficient to warrant a seizure. Additionally, counsel asserted that the officers did not locate the defendant inside the vehicle, which contained the firearms, but rather in the street, after canvassing the area for an "undefined amount of time."

¶ 15    Defense counsel next argued that the defendant was not a clear and present threat to anyone

in the community because he was not accused of making any threats, using, or brandishing a weapon and because no weapon was found on his person. Counsel further pointed out that the defendant's pretrial report did not indicate any prior violent convictions or a new violent criminal activity flag.

¶ 16    Defense counsel argued that even if the court believed that the defendant was a clear and present threat to the community, that threat could be mitigated by imposing certain conditions of release, including electronic monitoring or 24-hour home confinement.

¶ 17    In  mitigation, defense counsel offered that the defendant was a 29-year-old, lifelong resident of Cook County, that he had completed his GED in 2014 and that he now worked as an independent contractor for a demolition company. Counsel further pointed out that the defendant was the father of one young child and that his girlfriend was expecting another one. The defendant also regularly attended church and had an address on file for electronic monitoring.

¶ 18    In response, the State conceded that the description of the offender as a "black male with dreadlocks" was "vague" but asserted that it was not a coincidence that the defendant was discovered with a key fob that opened the doors and operated the stolen vehicle, in which the firearms were ultimately found. Over defense counsel's objection, the State further argued that the defendant's prior 2018 conviction for UUWF had also involved a stolen vehicle.

¶ 19    After the parties' arguments, the circuit court asked for the recommendation of a representative from "pretrial services," who indicated that the defendant's "new criminal activity" score was three out of six, that his "failure to appear" score was three out of six, and that his overall "PSA score coincide[d] with Pretrial Supervision Level 1."

¶ 20    After hearing all the evidence, the circuit court first found that the State met its burden in proving by clear and convincing evidence that the defendant had committed the detainable offense

of being an AHC. The court noted that it was undisputed that the defendant had a prior criminal history, and that the evidence proffered by the State at the detention hearing established that he was found in possession of firearms.

¶ 21    With respect to the possession element and in response to defense counsel's argument regarding the legality of the search, the court agreed that the description of the offender as a "black male with dreadlocks" was "vague" but nonetheless found that it was "accurate" and that the officers had a reasonable articulable suspicion to approach, stop and frisk the defendant. Specifically, the court found that there was a short period of time between the officers' initial observation of the vehicle, its lone driver and the defendant following the crash. The court further found it "compelling" that the description of the offender came from the officers who had initially observed the defendant speeding in the Nissan and not from either dispatch or 911. The court therefore concluded that when "immediately" upon following that speeding vehicle, the officers observed a "black male with dreadlocks" in the vicinity of the crashed car, they could lawfully approach him and at minimum initiate a "conversation" and "more than that based on the nature of this stop."

¶ 22    The circuit court next found that the State met its burden in proving by clear and convincing evidence that the defendant posed a real and immediate threat to the safety of the community. In this respect, the court found relevant the nature of the firearms found in the defendant's possession (namely two fully loaded firearms, one with a "ser-switch," one with a defaced serial number, as well as a 40-round drum). The court noted that while armed with these dangerous weapons, the defendant, who was not licensed to carry any weapons as a result of being a "three-time gun-convicted felon" had been driving a stolen vehicle "at a high rate of speed" through the neighborhood prior to crashing it.

¶ 23    Lastly, the circuit court held that there were no conditions of release that it could impose that would mitigate the risk of threat to the community. Noting the evidence presented in mitigation and the fact that the defendant was on parole when he was arrested for the instant crime, the court explained: "If a pregnant girlfriend, a child, a job and the threat of prison cannot motivate [the defendant] to comply with the laws of this jurisdiction, this court does not believe that any conditions it could mete out could motivate [the] defendant to comply."

¶ 24    Based on the aforementioned, the circuit court granted the State's petition and ordered that the defendant be detained pretrial. The defendant now appeals. See Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023).

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, the defendant asserts three errors. First, he argues that in weighing the evidence regarding whether he committed the charged offense, the circuit court abused its discretion in failing to consider that evidence of the charged crime may have been obtained as a result of an unlawful search and seizure. See 725 ILCS 5/110-6.1(f) (West 2022). Second, he contends that the State failed to prove by clear and convincing evidence that he posed a real and present threat to the safety of the community. Finally, the defendant asserts that the circuit court erred when it found that electronic monitoring could not mitigate the risk of that threat. For the following reasons, we disagree with the defendant.

¶ 27    At the outset we set forth the relevant pretrial-release provisions of the new statute. Pursuant to sections 110-2-1(a) and 110-6.1(e) of the Act, all defendants are presumed eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). The State may detain an accused if it establishes that the charged offense is eligible for detention and then proves that: (1) the proof is evident or the presumption great that the defendant committed an offense which qualifies him

for pretrial detention; (2) the defendant poses a real and present threat to the safety of any specific person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat. 725 ILCS 5/110-6.1(e) (West 2022).

¶ 28 The State must prove each and every one of these three elements by clear and convincing evidence. *Id*. Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *In Re Tiffany W*., 2012 IL App (1st) 102492-B, ¶ 12. It "is more than a preponderance but less than is required to convict an individual of a criminal offense." *Id*. If the State fails to carry its burden on any of these three elements, the presumption of release remains, and the detention is unlawful. 725 ILC 5/110-6.1(e) (West 2022).

¶ 29 At present, our courts disagree as to the appropriate standard of review. Some appellate decisions have concluded that all aspects of detention hearings under the Act are subject to abuse of discretion (see *People v. Whitmore*, 2023 IL App (1st) 231807, ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11) while others have exclusively utilized the manifest weight of the evidence standard (see *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12; *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8). Other courts have adopted a mixed approach, under which the circuit court's determinations that the State has proved by "clear and convincing evidence" that the defendant committed a qualifying offense, and that he is dangerous, is reviewed for the manifest weight of the evidence, while the ultimate decision regarding detention, or the imposition of conditions of release are subject to abuse of discretion review. See *People v. Parker*, 2024 IL App (1st) 232164, ¶ 50; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10; *People v.*

*Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24, 31. Still others have concluded that appeals under the Act should be reviewed *de novo.* See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18; *Saucedo*, 2024 IL App (1st) 232020 (Ellis, J., specially concurring); see also *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (declining to decide what standard of review applies, but suggesting that even under *de novo* review, the case could be resolved based on legal error).

¶ 30　While we would affirm the instant detention order under any standard, we agree with the rationale of those decisions that hold that detention orders under the Act should be reviewed for an abuse of discretion. *Whitmore*, 2023 IL App (1st) 231807(B), ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)); see *People v. Johnson*, 2019 IL App (3d) 190582, ¶ 8. In addition, as the reviewing court, we may not substitute our judgment for that of the circuit court merely because we would have analyzed the appropriate factors differently. *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 31　Turning to the merits of the defendant's contentions, we begin by addressing whether the State proved by clear and convincing evidence that "the proof is evident or the presumption great" that the defendant "committed" the charged offense of AHC. 725 ILCS 5/110-6.1(e) (1) (West 2022).[1]

¶ 32　A person commits the offense of AHC when he possesses a firearm after having been convicted a total of two or more times of certain qualifying offenses, including UUWF. 720 ILCS

---

[1] The parties agree that AHC is a detainable offense under the Act. See 725 ILCS 5/110-6.1(a)(6)(D) (West 2022).

5/24-1.7 (West 2022). The possession element of the AHC charge can be proven by a defendant's actual or constructive possession of a firearm. *People v Bogan*, 2017 IL App (3d) 150156, ¶ 27. Constructive possession exists where the defendant had knowledge of the presence of the firearm and exercised immediate and exclusive control over the area where the firearm is found. *People v. Jones*, 2023 IL 127810, ¶ 30. It is often established through circumstantial evidence. *Id.*

¶ 33    On appeal, the defendant does not directly challenge the State's proffer regarding his constructive possession of the firearms discovered inside the stolen vehicle. Instead, he contends that the circuit court failed to appropriately weigh that proffered evidence in the context of the fourth amendment (U.S. Const., amend. IV). The defendant points out that unlike the earlier version of the statute, the new Act explicitly permits courts at a detention hearing to consider whether the proffered evidence was obtained as a result of an unlawful search or seizure.[2] The defendant asserts that because in the instant case the description of the offender as a "black male with dreadlocks" was undeniably "vague," it is "possible that a later suppression hearing may result in a finding that [his] seizure *** was unlawful." The defendant asserts that had officers not illegally seized him they would not have recovered the key fob to the vehicle and eventually the firearms, which are the basis for his AHC charge. The defendant therefore argues that given that the firearms are "likely" to be suppressed at a future hearing, the circuit court abused its discretion in finding that there was clear and convincing evidence that he committed AHC. For the following reasons, we disagree.

---

[2]  Compare 725 ILCS 5/110-6.1(c)(1)(b) (West 2014) ("A motion by the defendant to suppress evidence *** shall not be entertained. Evidence that proof may have been obtained as the result of an unlawful search and seizure *** is not relevant to this state of the prosecution.") with 725 ILCS 5/110-6.1(f) (6) (West 2022) ("[E]vidence that proof of the charged crime may have been the result of an unlawful search or seizure, or both, or through improper interrogation, is relevant in assessing the weight of the evidence against the defendant.")

¶ 34    Recently, in *Parker*, we addressed the scope of fourth amendment claims raised during a detention hearing. There, we held that while the new Act states that a defendant's claim that the "proof of the charged crime may have been the result of an unlawful search or seizure," is "relevant in assessing the weight of the evidence against the defendant," the Act does not intend these provisions to be "a bar to pretrial detention, at least with regard to the first element of the [State's] petition." *Parker*, 2024 IL App (1st) 232164, ¶¶ 58-59 (citing 725 ILCS 5/110-6.1(f) (6) (West 2022)).

¶ 35    In doing so, we noted that sections 110-6.1(f)(5) and (f)(6) of the new Act expressly provide that a detention hearing is distinct from other criminal proceedings, such that any traditional bars on the admissibility of evidence are not applicable. *Parker*, 2024 IL App (1st) 232164, ¶ 58 (citing 725 ILCS 5/110-6.1(f)(5), (6) (West 2022)). In addition, we pointed out that under the provisions of the new Act, a defendant is explicitly prohibited from moving to suppress evidence or a confession during a detention hearing. *Id.*; see also 725 ILCS 5/110-6.1(f)(6) (West 2022) ("The defendant may not move to suppress evidence or a confession" at a dentition hearing). Accordingly, we held that while the question of whether evidence of the charged offense was illegally obtained "certainly" is a "defense to the charge itself," the legislature intended for this defense to be raised and fully considered at a suppression hearing, because such a hearing presents "a larger question for review, *** [and] requires assessment of witness credibility and evidence beyond what a detainment petition is required to do." *Parker*, 2024 IL App (1st) 232164, ¶ 61. As we explained:

> "Simply put, the issue before the court in a detention hearing is much narrower, and if the legislature had expressly sought to combine the two procedures, it could have done so. [Citation.] The plain language of the statute informs us that it did not." *Id.*

¶ 36    We therefore concluded that for purposes of a detention hearing a "fourth amendment argument is only 'relevant' to the court's overall assessment of the evidence." *Id*. ¶ 69. Consequently, we held that where the report of the proceedings "clearly shows" that the circuit court considered the defendant's fourth amendment argument in its overall assessment of the first element of the petition, a circuit court does not abuse its discretion in weighing the proffered evidence. *Id*.

¶ 37    Applying the rationale of *Parker* to the present circumstances, we find that the defendant has failed to establish that the circuit court improperly weighed the proffered evidence in context of the fourth amendment in finding that he committed the charged offense. Contrary to the defendant's position, it is clear from the report of proceedings that the circuit court considered the defendant's fourth amendment argument, balanced the State's proffered evidence, and ultimately determined that the State had met its burden on the first element.

¶ 38    Specifically, in response to defense counsel's argument that the seizure was improper because the description of the offender was "vague," the court held that the description was nonetheless "accurate" and therefore justified the officer's approach, stop and frisk of the defendant. The court explicitly held that there was only a short period of time between the officers' initial observation of the vehicle, its sole occupant and driver, and the defendant following the crash. The court further found "compelling" that the description of the offender came from the officers who had observed the defendant driving the vehicle and not from either dispatch or 911. The court therefore concluded that when "immediately" after their pursuit, the officers observed the defendant, who matched their description, in the vicinity of the crashed vehicle, they could lawfully approach him and initiate a conversation.

¶ 39     Upon learning the defendant's name and performing a name check, the officers discovered that the defendant was in violation of his parole, and that there was an outstanding warrant for his arrest. They therefore performed a custodial search. As the court noted, after patting down the defendant the officers discovered a key fob in his pockets, which opened and operated the crashed Nissan, and in which the officers ultimately found firearms in plain sight. Based on the aforementioned, the court concluded that the defendant was found in possession of a weapon, which he was not allowed to do based upon his status as a felon.

¶ 40     While reasonable minds could differ on the impact of the defendant's fourth amendment argument on the evidence proffered by the State, at this stage in the proceedings, we cannot say that the court's ruling "was arbitrary, fanciful, unreasonable," or that "no reasonable person would take the view adopted by the circuit court.' " *In re Marriage Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum*, 235 Ill. 2d at 36); see *Johnson*, 2019 IL App (3d) 190582, ¶ 8; see also *Parker*, 2024 IL App (1st) 232164, ¶ 69 (noting that because a "fourth amendment argument is only 'relevant' to the court's overall assessment of the evidence, a disagreement about the evidence's significance does not automatically render the court's decision unreasonable"). Because the  report of the proceedings here "clearly shows" that the circuit court considered the defendant's fourth amendment argument in its overall assessment of the first element of the petition, we conclude that the court did not abuse its discretion in weighing the proffered evidence and finding that the State established by clear and convincing evidence that the "proof [wa]s great or the presumption evident" that the defendant committed the charged offense. See *Parker*, 2024 IL App (1st) 232164, ¶ 69 (holding that the court's oral ruling "was not arbitrary" as the court's own oral pronouncements shows that "it clearly considered defendant's argument in its overall assessment of the petition.").

¶ 41    In coming to this conclusion, however, we reiterate the narrow purpose and scope of the detention hearing, which does not preclude the later filing of a motion to suppress and express no opinion as to the merits of any such future motion on a more developed record. See *Parker*, 2024 IL App (1st) 232164, ¶ 58-59 (citing 725 ILCS 5/110-6.1(f) (6) (West 2022)).

¶ 42    We next address whether the State proved by clear and convincing evidence that the defendant was a real and present threat to the safety of the community. 725 ILCS 5/110-6.1(e) (2) (West 2022). For purposes of this element, the Act provides a non-exhaustive list of factors that the circuit court may consider in assessing the defendant's "dangerousness" including, *inter alia*: (1) the nature and circumstances of the offense; (2) the defendant's criminal and social history; (3) the defendant's access to weapons; and (4) whether the defendant committed any offense while on some form of release from custody. 725 ILCS 5/110-6.1(g) (West 2022).

¶ 43    In the present case, the defendant asserts that the State failed to meet its burden because the only evidence of his threat to the community came from his "mere possession" of a firearm, and his driving of a stolen vehicle, neither of which are *per se* dangerous. We disagree.

¶ 44    In finding that the defendant posed a real and immediate threat to the safety of the community, the circuit court did not simply rely on the defendant's possession of a firearm. Instead, the court found relevant the nature and circumstances of the offense, the type of firearms recovered, the defendant's prior criminal history, and the fact that he committed the instant crime while on parole. See 725 ILCS 5/110-6.1(g) (West 2022).

¶ 45    Specifically, in its oral pronouncement the court noted that the instant offense involved a non-licensed former felon, with two loaded firearms within easy reach, driving a stolen vehicle through the neighborhood at a high rate of speed before crashing it in an alley. The court further found relevant the nature of "the firepower" inside the car, stating that both recovered firearms

were fully loaded with live rounds, and that one had an extended clip and was modified to remove its serial number and to fire automatically. Even more glaringly, the court noted, the car contained a 40-round drum magazine.

¶ 46 In finding the defendant posed a threat to the community, the court also addressed the defendant's criminal and social history, noting that he was "a three-time gun-convicted felon." These prior felonies all involved the defendant illegally possessing firearms despite being a felon. The evidence proffered by the State further established that at the time of the incident, there was an outstanding warrant for the defendant's arrest because he violated his parole in one of the aforementioned UUWF cases.

¶ 47 Under this record, and in light of the statutory factors considered by the circuit court, we fail to see how the court's determination that the defendant posed a safety risk to the community could be construed as "unreasonable, fanciful or arbitrary." *In re Marriage Heroy*, 2017 IL 120205, ¶ 24. Accordingly, we conclude that the court did not abuse its discretion in finding that the defendant posed a real and present danger to the community, requiring pretrial detention.

¶ 48 Lastly, we address whether any conditions of release could have mitigated the risk of that threat. 725 ILCS 5/110-6.1(e) (3) (West 2022).

¶ 49 In this respect, the defendant contends that the circuit court improperly weighed the mitigating factors and his pretrial services assessment scores, and despite a moderate public safety assessment and no new violent criminal activity flag, declined to impose electronic monitoring as a condition of his release. The defendant further posits that because electronic monitoring provides different rules and conditions from parole, the court was required to explain on the record why electronic monitoring would not work. For the following reasons, we disagree.

¶ 50    In finding that no conditions of release could mitigate the threat to the community, the circuit court unequivocally stated that despite numerous incentives to behave lawfully while actively on parole, the defendant continued to commit serious crimes while in possession of extremely dangerous weapons. The court acknowledged the "modest" public safety assessment but found that the "nature of the firepower" found in the defendant's possession signaled that no conditions could mitigate the threat to safety. Moreover, having considered the evidence offered in mitigation, the court stated that despite being "on parole" and having "a pregnant girlfriend, a job and child" "these positives were not sufficient motivation" for the defendant "to comply with state law." The court therefore stated it did "not believe that any conditions it could mete out could motivate [the] defendant to comply." After a review of the record, we find nothing "arbitrary, fanciful or unreasonable" in this assessment. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 51    Moreover, because during the detention hearing, defense counsel explicitly sought the imposition of electronic monitoring, we disagree with the defendant's position that the circuit court failed to articulate its reasons for rejecting this particular condition of release. The court here clearly considered and rejected this suggestion, subsequently explaining that in its view any imposed condition of release (including this one) would not be complied with. On review, we may not reweigh the relevant factors and substitute our own judgment for that of the circuit court. *Whitmore*, 2023 IL App (1st) 231807, ¶ 24. Moreover, electronic home monitoring is not an infallible method of preventing harm to public safety. See *e.g.*, *Whitaker*, 2024 IL App (1st) 232009 (where a defendant was charged with offenses while on pretrial condition of electronic home monitoring).

¶ 52    As a final remark, we observe that to the extent that the defendant argues that his detention was improper because no conditions of release could be imposed to prevent his willful flight from

prosecution, the State neither sought detention on this basis, nor did the circuit court base its detention order on these grounds. Accordingly, we need not consider this argument. Rather, we affirm the court's decision on the basis that no conditions could be imposed that would mitigate the threat to the community. 725 ILCS 5/110-2(a), 110-6.1 (West 2022).

¶ 53    For these reasons, we conclude that the circuit court did not abuse its discretion in finding that the State proved by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed AHC, that the defendant poses a real and present threat to the safety of the community, and that there are no conditions that would militate against that threat. Accordingly, we affirm the order of pretrial detention.

¶ 54    Affirmed.